# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

EDGARDO MELENDEZ,

Plaintiff,

vs.                                                    9:13-CV-622
                                                       (GLS/ATB)

ERIC T. SCHNEIDERMAN, *et ano.*,

Defendants.

---

EDGARDO MELENDEZ, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary and permanent injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF pp. 8, 10).[1]

---

[1] The court notes that the complaint is written in two distinctly different handwriting styles. (*Compare* Compl. at 1-2, 7-8 *with* Compl. at 3-6). On page 6, the complaint requests punitive damages of 5.5 million dollars from each defendant per year that plaintiff was in custody pursuant to the civil commitment, and 5.5 million dollars per year in compensatory damages from each defendant.

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Dkt. No. 17). Plaintiff has responded in opposition to defendants' motion, and defendants filed a reply. (Dkt. Nos. 25, 26). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d

However, on page 8, in different handwriting, in the section entitled "Prayer for Relief," the complaint asks for 7 million dollars per year in punitive and compensatory damages from each defendant, totaling $42 million dollars.

150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.  **Background of Relevant Caselaw**

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective

on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F. Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[2] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary

_____

[2] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

4

staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a), (g), and (k)). The hearing must commence withing 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full

commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions. The court must note that neither[3] court invalidated the section altogether as plaintiff seems to argue. Rather that prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[4] *Id.*

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and

---

[3] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[4] In making this determination, the court likened the analysis under the MHL to the section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[5] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III.   <u>Facts and Contentions</u>

Plaintiff alleges that he was arrested on March 18, 2002, was subsequently convicted, and was sentenced to serve three to six years of incarceration, with a maximum release date of March 18, 2008. Plaintiff states that he was held beyond his maximum release, without a hearing, based upon MHL § 10.06(k), in violation of due process and in violation of the injunctions issued in *MHLS-I*, and *MHLS-II* (Compl. at 7). Plaintiff takes an overly simplified view of the court's rulings and argues that the AG violated the injunctions, as well as the constitution, by applying section 10.06(k).

The plaintiff relies heavily on the decisions in the *MHLS* cases, rather than discussing facts in his own case, and he seeks only damages for the alleged violations. Defendants have submitted the court documents that were filed in plaintiff's MHL Article 10 proceeding, and they argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the

---

[5] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a membership organization to assert associational standing. *Id.* The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

statute of limitations and absolute immunity.  Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL.  The following facts are taken from the defendants' exhibits of which this court takes judicial notice.

Defendants' Exhibit A is the AG's "Petition for Civil Management" filed in plaintiff's case.[6]  The petition is dated March 13, 2008 and states that plaintiff, Edguardo[7] Melendez was arrested on May 6, 2003[8] and charged with one count of Rape, First Degree; five counts of Sodomy, First Degree; five counts of Sexual Abuse, First Degree; and five counts of Endangering the Welfare of a Child. (Boivin Decl. ("Def.s'")[9] Ex. A at 4, 11) (Dkt. No. 17-1).  He was subsequently indicted on May 27, 2003[10] for two counts of Rape, First Degree; one count of Sodomy, First Degree; and one count of Endangering the Welfare of a Child. (*Id.* at 5)  These charges involved sexual intercourse and related conduct with four of the plaintiff's children, aged ten,

---

[6] The AG at the time of the signing of the petition was Andrew M. Cuomo, and the AAG was Donald Leo. (Def.s' Ex. A at 4).

[7] Plaintiff signed his name "Edgardo Melendez," (Compl. at 8), not "Edguardo Melendez," and other than this reference, the court will use the spelling as plaintiff has it in the complaint.

[8] This is contrary to the plaintiff's statement that he was arrested on March 18, 2002. (Compl. at ¶ 4).  This discrepancy is irrelevant to this court's decision.

[9] All of defendants' exhibits in this case are attached to defense counsel's declaration. (Dkt. No. 17-1).  Thus, the court will refer only to the exhibits as Def.s' Exhibits, rather than repeat Boivin Decl.  Notwithstanding that some of defendants' exhibits have their own page numbers, when the court refers to a specific page, unless otherwise noted, the page will be the one assigned by the court's electronic filing system, CM/ECF.

[10] The petition states that plaintiff was indicted on May 27, 2004, but this may be a typographical error because the following paragraph states that plaintiff pled guilty to the entire indictment on May 28, 2003. (Def.s' Ex. A at 5, ¶ 2).

seven, and four years, respectively. (*Id.*)  Plaintiff pled guilty to the entire indictment on May 28, 2003 and was sentenced to an indeterminate sentence of three to six years incarceration. (*Id.*)  The petition was filed in Richmond County because plaintiff was incarcerated therein (Arthur Kill Correctional Facility), and MHL § 10.06(a) provides for venue in the county of incarceration. (*Id.*)

On February 25, 2008, pursuant to MHL § 10.05(b), the New York State Office of Mental Health ("OMH") gave the AG and the Commissioner of Mental Health notice that plaintiff was nearing the end of his sentence and was about to be released into the community. (*Id.* at 5, ¶ 5).  A copy of the notice was attached to the AG's Petition. (*Id.*) OMH referred plaintiff's case to a CRT, and served the notice of referral on plaintiff. (*Id.* ¶ 6).  The petition states that on March 10, 2008, plaintiff and the AG were served with the CRT's determination that plaintiff was a "'sex offender requiring civil management.'" (*Id.* ¶ 7).  A copy of the CRT's determination was attached to the petition. (*Id.*)  The petition reviewed the Article 10 provisions and requirements. (*Id.* ¶¶ 9-18).

The AG then outlined the CRT's Article 10 specific evaluation of plaintiff. (*Id.* at 8-10, ¶¶ 19-26).  Plaintiff was examined by Mark Cederbaum, Psy. D., who conducted the examination for the purpose of assessing plaintiff's "risk for dangerousness and for sexual recidivism in order to determine whether plaintiff was a "'sex offender requiring civil management.'" (*Id.* at 8, ¶ 19).  Dr. Cederbaum diagnosed plaintiff as suffering from Pedophilia . . . "Limited to Incest, Nonexclusive Type," and concluded with a reasonable degree of certainty that plaintiff was suffering from a mental abnormality as

defined by the MHL, predisposing plaintiff to the commission of a sex offense, and he would have serious difficulty in controlling such behavior. (*Id.* ¶¶ 20-21)  The petition further states that Dr. Cederbaum found that plaintiff did not acknowledge his behavior and failed to complete sex offender treatment, demonstrating a lack of empathy for the harm that he caused his victims, and this suggested "a lack of insight or internal resources with which to control his sexual urges toward children." (*Id.* ¶ 21).  For these, and other reasons, plaintiff was assessed to be at a "moderate to high risk for sexual recidivism." (*Id.* ¶ 22).  Among other requests, the AG asked that plaintiff be retained pursuant to MHL § 10.06(h)[11] until the probable cause hearing was held. (*Id.* at 11).

On March 14, 2008, the day after the AG's petition, New York Supreme Court Justice Robert J. Collini issued an Order to Show Cause, returnable before him on March 20, 2008. (Def.s' Ex. B).  An attorney from MHLS was appointed to represent plaintiff, and plaintiff was ordered to show cause why he should not be declared a sex offender suffering from a mental abnormality requiring civil management. (*Id*. at 13).  Both plaintiff and counsel were served with the order, and plaintiff was ordered held beyond his release date, pending the probable cause hearing, pursuant to MHL § 10.06(h). (*Id.* at 14).

The probable cause hearing was held on May 2, 2008 before New York Supreme Court Justice Michael A. Gross. (Def.s' Ex. C) (Dkt. No. 17-1 at 16-24).  Dr. Cederbaum testified at the hearing for the AG. (*Id.* at 16).  Justice Gross issued his

---

[11] Section 10.06(h) was not challenged in *MHLS-I and II* and provided proper authority to hold the plaintiff pending the probable cause hearing. *See MHLS-II*, 785 F. Supp. 2d at 210 (listing the sections challenged in the complaint).

order pursuant to MHL § 10.06(k) on July 1, 2008. (*Id.* at 16, 24). Justice Gross issued

a detailed opinion outlining the hearing testimony and other evidence of record, much

of which was contained in Dr. Cederbaum's report.[12] (*Id.*) One of the issues discussed

by the court was the plaintiff's apparent denial and/or failure to accept responsibility

notwithstanding that he pled guilty to sexual conduct with his own small children. The

court also noted that during plaintiff's incarceration, he was diagnosed with

schizophrenia, anxiety disorder, psychotic disorder, and polysubstance dependence. (*Id.*

at 18-19). Dr. Cederbaum expressed his conclusion that the plaintiff was in need of

civil management and would be a danger to the community if released pending trial.

(*Id.* at 20). Plaintiff's counsel was afforded the opportunity to cross-examine Dr.

Cederbaum and made various arguments in opposition to a probable

cause/dangerousness finding. (*Id.*) Counsel attempted to explain why plaintiff failed to

finish the sex offender program while he was incarcerated, that his diagnosis was

"limited to incest," and that neither of the two older children had been the victim of any

sexual acts. (*Id.*)

The court's opinion contained a lengthy section on "Conclusions of Law." (*Id.* at

21-23). In this section, the court discussed MHL § 10.06(k) and specifically focused

upon the preliminary injunction issued in *MHLS-I*, correctly stating that the federal

court had enjoined detention under MHL § 10.06(k) "based only on a finding of mental

---

[12] Dr. Cederbaum relied on "numerous" records, including New York City Police Department investigative and arrest reports, pre-sentence reports, Department of Corrections (now the Department of Corrections and Community Supervision "DOCCS") records, Division of Parole records, and Bronx County District Attorney documents. (Dkt. No. 17-1 at 17).

abnormality," and noted that the "District Court reasoned . . . that due process will not tolerate the involuntary confinement of the individual not determined to pose a danger." (*Id.* at 22). Justice Gross concisely stated the problem with section 10.06(k). In general, a probable cause hearing could result in one of two relevant conclusions: either the individual is a sex offender requiring strict and intensive supervision, but would not require confinement, or that the individual is a dangerous sex offender requiring confinement. (*Id.* citing MHL §§ 10.03(r), (e)). After the probable cause hearing, under section 10.06(k), either of those findings required that the individual be civilly confined prior to the trial. (*Id.*) This could result in the confinement of an individual who was found to have a mental abnormality, without a finding that the person was also a danger to the community. (*Id.*) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). Justice Gross acknowledged that the preliminary injunction in *MHLS-I* required that the court detaining an individual pursuant to section 10.06(k), after the probable cause hearing, but before the commitment trial, also find that the individual was "sufficiently dangerous to require confinement, and that lesser conditions of supervision would not protect the public during the pendency of the proceedings. (*Id.* at 23).

Justice Gross then specifically found that the requisite showing of mental abnormality ***and*** dangerousness had been made in plaintiff's case, even though plaintiff had raised "some" claims on which the findings of the government expert could be challenged. (*Id.*) The court specifically found that plaintiff's "lack of remorse, the absence of treatment during his incarceration, and his refusal to acknowledge that he has a mental abnormality indicates a lack of insight and lack of self-control that

establishes reasonable cause to believe that he is a danger to others and likely to commit sex offenses if not confined to a secure treatment facility." (*Id.*) Justice Gross ordered confinement pending trial and ordered that the parties appear before him to schedule the trial. (*Id.* at 23-24). On June 6, 2008, Justice Gross set the matter down for trial on June 30, 2008. (Def.s' Ex. D) (Dkt. No. 17-1 at 26-27).

The jury trial did not take place until June 8, 2011 and continued on several days thereafter, concluding on June 20, 2011, before New York State Supreme Court Justice Colleen Duffy. (Def.s' Ex. E) (Dkt. No. 17-1 at 29-34). Psychiatrist Roger M. Harris testified for the AG, and Dr. Roy Aranda, a Psychologist, testified for the plaintiff. (*Id.* at 29-30). Both witnesses were qualified by the Court as experts in the field of forensic psychiatry and psychology respectively. (*Id.*) Justice Duffy stated that the jury returned its verdict on June 20, 2011, finding that plaintiff was a detained sex offender who now suffers from a mental abnormality in that he has a congenital or acquired condition, disease or disorder, affecting his emotional, cognitive or volitional capacity, such that it predisposes him to commit a sex offense and results in his having serious difficulty in controlling such conduct. (*Id*. at 30)

Because of the jury's finding, Justice Duffy provided the parties an opportunity to present additional evidence to determine whether plaintiff was in need of confinement or whether he could be released under strict and intensive supervision. (*Id.*) This "Dispositional Hearing" was held before Justice Duffy on October 25, 2011. (*Id.*) Dr. Harris testified again at the Dispositional Hearing. (*Id.*) Plaintiff also testified at the hearing. Based on the evidence, the court found that the AG had proven

by "clear and convincing" evidence, that plaintiff was a dangerous sex offender requiring confinement. (*Id.* at 30-34).  Based, *inter alia*, upon the finding that plaintiff would have an inability to control his behavior if released, the court ultimately found that he was a danger to others if not confined to a secure facility. (*Id.* at 34).  On November 15, 2011, plaintiff was ordered confined, but Justice Duffy also ordered that he be provided with written notice of his right to petition the court for discharge pursuant to MHL § 10.09, and that he also retained the right to petition the court for discharge or release under strict and intensive supervision in the future. (*Id.*)

## IV. Absolute Immunity/Personal Involvement

### A. Legal Standards

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d

14

Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful

condition or event).

### B. Application

In this case, plaintiff is seeking only damages against two AG defendants. Any suit for damages against these defendants is barred by absolute immunity because the AG was initiating a proceeding against plaintiff on behalf of the government. In addition, neither of the two named defendants were personally involved in the alleged violation of which plaintiff complains. Eric Schneiderman is the current AG who was not even in office at the time in question,[13] and the Assistant AG ("AAG") involved in plaintiff's Bronx County probable cause hearing was Elaine K. Yacyshyn, not defendant James Williams. (Def.s' Ex. D). AAG Yacyshyn was also the government counsel for the commitment trial, which was also held in Bronx County. (Def.s' Ex. E) (Dkt. No. 17-1 at 35). Defendant Williams's name does not appear on any of the relevant papers, nor does it appear that he was in any way personally responsible at any relevant time in the plaintiff's case.

In plaintiff's response to the motion to dismiss, he agrees that neither defendant Schneiderman, nor defendant Williams were involved in his case and states that he will

---

[13] The court notes that for purposes of injunctive or declaratory relief, the supervisory official who has the authority to bring about the specific injunctive relief plaintiff seeks, is an appropriate defendant. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 137-40 (D. Conn. 2011) (discussing proper defendants for various types of relief). Likewise, Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief against state officers in their "official" capacities, while the Eleventh amendment does prohibit suits for damages against those officers in their official capacities. *Neroni v. Zayas*, No. 3:13-CV-127, 2014 WL 1311560, at *7 (N.D.N.Y. March 31, 2014) (citing *inter alia Ex Parte Young*, 209 U.S. 123 (1908)). Plaintiff in this case has confused the *MHLS* case which was a pre-enforcement action for declaratory and injunctive relief with an action for damages against an official in his or her "individual capacity."

16

submit the proper names: Andrew Cuomo and Elaine Yacyshyn. (Dkt. No. 25 at 1-2). Plaintiff does attempt to claim that defendant Schneiderman was somehow personally involved because he is the current AG, and he "consented to the consent of enforcing the petition and other orders in this case." (*Id.* at 2). Even if plaintiff had named or is moving to amend his complaint to name individuals who were involved in his commitment proceedings, as stated above, they would be entitled to absolute immunity from damages.[14]

In *Roache v. Attorney General's Office*, No. 9:12-CV-1034, 2013 WL 5503151, at *13-15 (N.D.N.Y. Sept. 30, 2013),[15] Magistrate Judge Peebles recommended that the court dismiss a very similar action for damages as against the AG defendants in both their official and their individual capacities, based on absolute immunity, lack of personal involvement, and Eleventh Amendment immunity. Because Magistrate Judge Peebles liberally construed plaintiff's claims in *Roache* to give rise to a due process claim, Judge Peebles recommended dismissing the action, but affording "plaintiff an opportunity to amend his complaint to name a defendant that may be properly sued for this alleged violation, *if such an individual exists*." *Id.* at *15 (emphasis added). As will be discussed below, this court finds that to allow an amendment would be futile

---

[14] Generally, one cannot amend a complaint in response to a motion to dismiss. *See Chamberlin v. City of White Plains*, No. 12-CV-5142, 2013 WL 6477334, at *25 n.19 (S.D.N.Y. Dec. 10, 2013) (citing *Wright v. Ernst & Young. LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). However, in pro se cases in which the court liberally construes plaintiff's pleadings, the court could dismiss the action with the opportunity to amend, which the court will discuss below.

[15] District Court Judge Lawrence Kahn adopted Judge Peebles's Report-Recommendation in is entirety. 2013 WL 5503151, at *1-3.

because even if a claim existed as against some individual, the statute of limitations has run as to the potential claims.

Thus, the complaint may be dismissed as against the existing defendants, without leave to amend to add other AAGs in their individual or official capacity who would be equally immune to suit.[16]

## V.   **Due Process**[17]

### A.   **Legal Standards**

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek*

---

[16] To the extent that he is attempting to sue the defendants in their official capacities for damages, the Eleventh Amendment would also bar the action. The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted). Thus, the Eleventh Amendment would have precluded a claim for damages under section 1983 against defendants in their official capacities.

[17] Plaintiff also claims that his Fifth Amendment rights were violated by defendants in this action. As defense counsel points out, the Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). *See also Ahlers v. Nowicki*, No. 9:12-CV-539, 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014). Plaintiff in this case combines the Fifth Amendment with the Fourteenth Amendment "Due Process" clauses. To the extent that plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice.

*v. Jones*, 445 U.S. 480, 493 (1980).  The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

## B.   Application

The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases.  The procedural protections afforded by the statute have been stated in this report above.  The only problem, relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual after a probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous.  However, a review of the decision by Justice Gross after plaintiff's probable cause hearing shows that Justice Gross was well aware of the preliminary injunction issued in *MHLS-I.*  He cited the federal court decision, analyzed it in his order, found plaintiff to be a danger to the community, and specifically worded his decision in order to avoid violating either the injunction or plaintiff's constitutional rights.

As stated above, the *MHLS* cases did ***not*** enjoin the application of section 10.06(k), the injunctions (now no longer in effect), merely prohibited section 10.06(k) from being enforced to detain an individual after his probable cause hearing and prior to the commitment trial ***without an individualized finding that he was dangerous and that confinement was the only way to protect the public***.  Justice Gross made that specific finding, and thus, he did not violate the preliminary injunction that was issued in *MHLS-I.*  Plaintiff was properly detained pending his commitment trial.

## VI. Opportunity to Amend

### A. Legal Standards

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at least once. *Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495 at *1 (citing *Cuoco v. Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)). The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999)).

### B. Application

The court notes that Magistrate Judge Peebles recommended dismissal as against two named AG defendants, with leave to amend to add "other" defendants who might have been "personally responsible" for the due process violation upon which Judge Peebles recommended denying the defendants' motion to dismiss. 2013 WL 5503151, at *15. He found it premature to dismiss the plaintiff's *claim* that he was not afforded a timely probable cause hearing and trial according to the statute, even though the *named defendants* had to be dismissed based on absolute immunity. 2013 WL 5503151, at *9, 12. Magistrate Judge Peebles recommended dismissing the action to the extent that it challenged the application of section 10.06(k). 2013 WL 5503151 at *10-12.

The court notes that the only due process issue retained by the court in *Roache* involved an interpretation of plaintiff's complaint as raising an issue regarding the delay in his probable cause hearing and trial as not in compliance with the time limits of

the MHL. *Id.* at *12.[18]  In this case, I do not interpret plaintiff's complaint ***itself*** as raising any issue other than the enforcement of section 10.06(k), and there would be no amendment that plaintiff could propose that would allow him to bring an action against any defendant based upon a violation of a statute that was clearly not violated as discussed above.

However, plaintiff's response papers make some additional factual assertions, some of which do not appear related to the matters asserted in the complaint.  Other statements made by plaintiff in his response require further consideration in order to determine whether the court should allow the plaintiff the opportunity to amend.[19]

### 1. "Jurisdictional Issue"

In plaintiff's response to defendants' motion to dismiss, he states that he was an inmate in Oneida County, but that papers were signed by a Justice in Onondaga County, raising a "jurisdictional" issue in his case.  (Dkt. No. 25 at 6).  Plaintiff also states that he "had" to sign a motion to transfer his proceedings from Oneida County to the Bronx, but there [was no] "motion(s)" to transfer the action from Oneida County to Onondaga County.  It is quite clear that the state court petition in this case was filed in Richmond

---

[18] Magistrate Judge Peebles stated that "[i]n summary, only the allegation that plaintiff's due process rights were violated by the failure to conduct a probable cause hearing and trial in accordance with the time frames prescribed in MHL article 10 are sufficient to state a cognizable section 1983 claim."

[19] Although new claims may generally not be raised in opposition to a summary judgment motion, a motion to dismiss comes early enough in the action to justify allowing plaintiff to amend the complaint to assert the viable claim. *See Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 219-20 (N.D.N.Y. 2008) (discussing the difference between asserting new claims in opposition to a summary judgment motion versus new factual assertions in response to a motion to dismiss).

County where plaintiff was incarcerated at the time and then removed to Bronx County where plaintiff was convicted. (Def.s' Ex. A & B).  There is no indication that any orders during the relevant time period were signed in Onondaga or Oneida County. These factual allegations do not raise any issue that would require the court to allow an amendment of the complaint regarding any "jurisdictional" issue.[20]

## 2.    Delay in Commitment Proceedings

In his response papers, plaintiff also alleges that he did not "sign a waiver" of his right to a timely probable cause hearing or a timely trial "to commence within (60) days of the Probable Cause Hearing." (Dkt. No. 25 at 7).  This claim appears similar to the issue that Judge Peebles interpreted the complaint in *Roache* as raising.  Based on the defendants' exhibits filed in this case, the court cannot determine whether the time limits in the MHL were followed.[21]  The AG's petition was filed on March 1, 2008, and plaintiff's anticipated release date was March 18, 2008.  The MHL provides that the probable cause hearing must be held within thirty days of the date of the petition or within 72 hours after the plaintiff's release date if he is due to be released prior to the 30 day period.  MHL §§ 10.06(a) (30-day limit), 10.06(h) (72-hour limit).  The probable

---

[20] The factual statements may be unrelated to plaintiff's original complaint because it appears that plaintiff's papers, similar to various other actions filed in the Northern District of New York, which challenge the application of the same MHL section, are "form" documents, written by inmates other than the named plaintiff, and cobbled together to create pleadings.  It appears that these "forms" involve the inmates/plaintiffs filling in blanks that have been left for them to insert their individualized information.

[21] I must note that this court does ***not*** make a finding that the time limits were not followed, merely that there is insufficient evidence presented for the court to find otherwise, and because this is a motion to dismiss, the court must accept plaintiff's factual statements as true.

cause hearing should have been held before March 21, 2008. In fact, the Order to Show Cause, signed by the Justice Collini on March 14, 2008, originally scheduled the probable cause hearing for March 20, 2008. (Def.s' Ex. B) (Dkt. No. 17-1 at 13-14). The Order to Show Cause also stated that "pending the resolution of the probable cause hearing by the Court . . . the New York State Office of Mental Health is authorized to retain [plaintiff] past his scheduled release date pursuant to [MHL] Section 10.06(h) for good cause shown." (*Id.* at 14). This statement ***alone*** does not authorize detention past the 72-hour time limit.

The next exhibit is Justice Gross's decision stating that the probable cause hearing was held on May 2, 2008. (Def.s' Ex. C) (Dkt. No. 17-1 at 16-24). The decision was dated July 1, 2008. (*Id.* at 24). However, in a separate Order, issued June 6, 2008, Justice Gross stated that he found probable cause, and he scheduled the commitment trial for June 30, 2008 (a date prior to the issuance of his formal probable cause decision). He stated that the plaintiff would not be released pending the completion of the trial. (Def.s' Ex. D) (Dkt. No. 17-1 at 27). There was a clear finding of dangerousness in Justice Gross's formal decision, even though there was no such finding in the short order. As stated above, there was no violation of the *MHLS-I* preliminary injunction or the constitution. However, the next exhibit shows that the commitment jury trial did not begin until June 8, 2011 (almost three years later). (Def.s' Ex. E) (Dkt. No. 17-1 at 29-34). Justice Duffy did not sign her decision until November 15, 2011. (*Id.* at 34). The trial was clearly held beyond the 60-day time limit contained in the statute.

The MHL makes it clear that the inmate may waive the time limits in the statute,[22] although in his response to defendants' motion to dismiss, he states that he did not "sign" a waiver of his rights under the statute. There is no requirement in the statute that the inmate "sign" a waiver, but based on the documents presented there is no evidence of any waiver, signed or otherwise. The problem for plaintiff is that his lack of a waiver would be either the responsibility of the court, the AG, or his attorney.

This court cannot find that plaintiff could amend his complaint to name a defendant or defendants who would have been responsible for the delay, and/or the lack of proper waiver who would properly be subject to a damage claim. To the extent that plaintiff would name his attorney as a defendant, he or she would not have acted under color of state law, even if the attorney was appointed by the court and was an MHLS employee. Public defenders, legal aid attorneys, and private counsel, representing an

---

[22] MHL § 10.08 is entitled "Procedures under this article." Section 10.06(f) provides as follows:

> Time periods specified by provisions of this article for actions by state agencies are goals that the agencies shall try to meet, but failure to act within such periods shall not invalidate later agency action except as explicitly provided by the provision in question. The court may extend any time period at the request, or on the consent, of the respondent. No provision of this article shall be interpreted so as to prevent a respondent, after opportunity to consult with counsel for respondent, from consenting to the relief which could be sought by an agency with jurisdiction by means of a court proceeding under this article.

This section clearly states that the time limits are "goals," and that the failure to abide by those limits will not invalidate any later action taken. The language also makes it clear that the court may extend the time limits on consent, and that an individual may "consent[] to the relief" which the agency seeks to have granted by the court. Thus, the ability to waive is clear and there is no indication that the "waiver" must be in writing.

individual, do not act under color of state law, as required to support a section 1983 action. *See Brewster v. Nassau County*, 349 F. Supp. 2d 540, 546-47 (E.D.N.Y. 2004) (Legal Aid attorney); *Green v. Bartek*, No. 3:05-CV-1851, 2007 WL 4322780, at *2-3 (D. Conn. 2007) (attorney representing Green in a family court neglect petition). To the extent that the delay was attributable to the AG or to the court, they would be protected by absolute immunity. *See Mireless v. Waco*, 502 U.S. 9, 9-10 (1991) (with minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions). In any event, there are further reasons to deny the plaintiff the opportunity to amend in this case.

## VII. **Statute of Limitations**

### A. **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law, governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191

(2d Cir. 1980) (internal quotation marks omitted)).  Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled.  *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

## B.    Application

In this case, even if the court were to find that there was a named defendant that plaintiff could add, his claims would likely be barred by the statute of limitations. Plaintiff claims that he never signed a waiver of the time limits for his probable cause hearing or his trial.  As stated above, the MHL provides that, after a finding of probable cause, and absent waiver or court order extending the time, the trial must be held within sixty (60) days of the probable cause determination.  The decision on probable cause in this case was issued on July 1, 2008.  The original probable cause finding was dated June 6, 2008, and the order indicated that the court scheduled the trial for June 30, 2008. (Def.s' Ex. D & E) (Dkt. No. 17-1 at 24, 26-27).

When sixty days passed from the time of the probable cause finding, and plaintiff had not had a trial, he and his attorney would presumably have been aware that the statute's time limits had been violated, and any cause of action, to the extent that one existed would have accrued at that time.  Even if the court begins to count the sixty days from the date that Justice Gross issued his probable cause decision on July 1, 2008, sixty days would have expired on September 1, 2008.  Although plaintiff's trial did not begin until three years later in 2011, plaintiff would have been aware of his cause of action on, or shortly after, September 1, 2008.  Adding three years to September 1, 2008 would bring plaintiff to September 1, 2011.  Plaintiff dated his

complaint in this case on May 29, 2013, well more than two years after the statute ran. The court is well aware that plaintiff's trial was not held until June of 2011, but plaintiff was represented by counsel at the probable cause hearing and at the time of trial, so presumably when the court failed to hold the trial within 60 days of the probable cause decision, plaintiff would have been aware of the statutory violation.

Even though the trial did not occur until 2011, a single violation (the failure to hold a trial within 60 days of the probable cause determination), with continuing "consequences" does not extent the accrual of the statute of limitation. *See Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) (distinguishing a due process case in which the constitutional injury included the failure to provide a hearing allowing the plaintiff to challenge the continued retention of his vehicle with a case where the claim was based on one unconstitutional hearing with continuing consequences); *Shannon v. Recording Industry Ass'n of Amer.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987) (single violation with continuing consequences is insufficient to extend the accrual past the original act); *Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992) (a "continuing violation" which would change the accrual date is occasioned by continuing unlawful acts, not by continued ill effects from the original violation). In this case, plaintiff's cause of action would have accrued at the time that he was not afforded his commitment trial within 60 days of the probable cause determination.[23] This occurred more than three years before plaintiff signed his

---

[23] Any claim based on the delay in holding a probable cause hearing would have certainly accrued, at the latest, at the time the probable cause hearing was held on May 2, 2008. Three years from that date would have been May 2, 2011.

complaint.

There is no indication that there would be any cause for equitable tolling, particularly because plaintiff was represented by counsel during the pendency of the proceedings under the MHL. Thus, allowing plaintiff to amend would be futile, assuming that he could even determine a proper individual to sue, because any claim would barred by the statute of limitations. In addition, since any viable amendment would involve adding new defendants who could be liable for damages, any attempt to add these individuals would also run afoul of the statute of limitations. Thus, this court will recommend granting defendants' motion to dismiss and dismissing the complaint with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 17) be **GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 24, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge